**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

ROBERT S. CRAWFORD,

      Plaintiff,

                                CIVIL ACTION NO.

v.                             1:13-cv-02468-WSD-RGV

CIRCLE K STORES INC.,

      Defendant.

**MAGISTRATE JUDGE'S
<u>NON-FINAL REPORT AND RECOMMENDATION</u>**

Plaintiff Robert S. Crawford ("Crawford") alleges that defendant Circle K Stores, Inc. ("Circle K"), retaliated against him by terminating his employment in violation of 42 U.S.C. § 1981 ("§ 1981"). [Doc. 1].[1] Circle K has filed a motion to dismiss Crawford's complaint in its entirety, or alternatively, to dismiss Crawford's request for injunctive relief, [Doc. 5], which Crawford opposes, [Doc. 8]. For the reasons stated herein, it is **RECOMMENDED** that Circle K's motion to dismiss, [Doc. 5], be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

# I.  BACKGROUND[2]

Crawford was hired by Circle K as a manager in December, 2003, and was promoted to the position of Region Training Specialist on August 25, 2005.  [Doc. 1 ¶¶ 8-9].  As part of his duties as a Region Training Specialist, Crawford traveled throughout the Southeast region and hired and trained Circle K employees.  [Id. ¶ 10].  In this position, Crawford had access to employees' personnel files, which included pay information, and he observed that Circle K "routinely paid males more than females and Caucasians more than African Americans, as a matter of policy." [Id. ¶¶ 11-13].  Crawford's supervisor at Circle K was David Lloveras ("Lloveras"). [Id. ¶ 9].

Crawford claims that he was also required to assess employees and provide feedback to management regarding their performance, and that Lloveras instructed him to "change the [positive] assessment[s] of minority employees," which he alleges in most cases led to their termination.  [Id. ¶¶ 14-15].  Crawford alleges that he "began complaining that minorities and females were being treated negatively as compared to their white or male colleagues, both in hiring and firing and with unequal pay," that he complained in writing and verbally to the Human Resources

---

[2] The background information contained in this section is drawn from Crawford's complaint and does not represent findings of fact by the Court.

Director, the Human Resources Manager, and the Vice-President, but that he was repeatedly ignored and told that Circle K would support Lloveras' actions and that Crawford "would be fired if he kept complaining because the company was never going to change." [Id. ¶¶ 17-19]. Crawford alleges that he continued to complain to Human Resources in 2005 and 2006 about discriminatory and racially-biased comments, see [id. ¶¶ 20-21], and that Lloveras "threatened him not to put complaints of that nature in writing again" and subsequently advised him that he could find someone who would do what he wants and Crawford would "go away," [id. ¶¶ 22, 24 (internal marks omitted)].

On March 3, 2008, Crawford was promoted to the position of Market Manager, in which he continued to assess the performance of employees and also had the authority to terminate employees. [Id. ¶ 26]. Crawford alleges that Lloveras instructed him to terminate minority employees "with no performance or other issues, and pay minorities less than what [Circle K] paid Caucasian employees." [Id. ¶ 27]. Crawford alleges that Lloveras also instructed him to "favor Caucasian employees, and specifically males, in his hiring and promotional decisions and annual reviews" and "to put a white person in there" because he did not "want any black people in there." [Id. ¶¶ 27-28 (internal marks omitted)]. In particular, Crawford alleges that in January, 2009, Lloveras directed him to "set up" a store

3

manager that he thought was too old and too ugly to run a location and that when

he refused, Lloveras threatened his employment until he terminated the employee.

[Id. ¶¶ 29-30].

In February of 2009, Crawford complained in writing to the Human Resources

Manager about the alleged discriminatory actions. [Id. ¶ 34]. Specifically, Crawford

claims he complained of racially-charged comments, but that the only response he

received was that Circle K would back Lloveras' actions. [Id. ¶¶ 35-36]. Thereafter,

Crawford alleges that on July 15, 2009, he complained in writing to Lloveras about

Lloveras' promotion of a Caucasian employee who was on a performance action

plan at the time, and in a subsequent conversation with Lloveras, he again

complained that Circle K was paying Caucasians more than African Americans and

men more than women. [Id. ¶ 38]. Crawford alleges that Lloveras responded that

they needed to hire more white males for possible future promotions as he "was not

about to promote any of the hood rats he inherited" and that it was bad enough that

he had been forced to hire a black male employee and Crawford "better play ball."

[Id. ¶¶ 39-40 (internal marks omitted)]. Crawford alleges that he reiterated his belief

that the Caucasian employee should not be promoted and claims that Lloveras then

"became very angry and cursed at [him]" and "suggested that [he] change his

statement." [Id. ¶¶ 41-42].

On July 17, 2009, Crawford met with the Human Resources Director to complain about "the blatantly discriminatory employment practices at Circle K," [id. ¶¶ 43, 46], and she cautioned him that while he did not break any policies by complaining, the company would support Lloveras, [id. ¶ 45]. Crawford was terminated on July 28, 2009, despite having never received any disciplinary action and consistently having received meets or exceeds expectations on performance review ratings. [Id. ¶¶ 47-48].

Based on these allegations, Crawford filed this action against Circle K, asserting a sole claim that he was terminated in retaliation for his complaints of discrimination in violation of § 1981. [Id. ¶¶ 49-52]. In his prayer for relief, Crawford seeks a permanent injunction against Circle K "prohibiting it from engaging in any employment practice or policy which discriminates against [him] or others similarly situated because of their race and/or opposition to discriminatory or unlawful practices, or because of their participation in this lawsuit," among other requests for relief. [Id. at 11-12]. Circle K moves to dismiss Crawford's complaint, [Doc. 5], which Crawford opposes, [Doc. 8].

## II.  STANDARD OF REVIEW

Circle K moves to dismiss Crawford's complaint pursuant to Rule 12(b)(1) for lack of standing and pursuant to Rule 12(b)(6) for failure to state a claim upon which

relief can be granted.  <u>See</u> [Doc. 5].  "A motion to dismiss pursuant to Rule 12(b)(1) encompasses . . . challenges based on lack of standing."  <u>Dantzler, Inc. v. Hubert Moore Lumber Co.</u>, Civil Action No. 7:13–CV–56 (HL), 2013 WL 5372750, at *1 (M.D. Ga. Sept. 24, 2013) (citation omitted).  "A Rule 12(b)(1) standing challenge can be either factual or facial," <u>id.</u> (citation omitted), and here, Circle K's challenge of Crawford's standing to seek injunctive relief is a facial challenge, <u>see</u> [Doc. 5].  "Because this is a facial attack, the Court must afford [Crawford] the benefit of safeguards similar to those provided in opposing a Rule 12(b)(6) motion[.]"  <u>Dantzler, Inc.</u>, 2013 WL 5372750, at *1 (citation and internal marks omitted).

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action when the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the court must accept Crawford's allegations as true and construe the complaint in his favor.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Duke v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993).[3]  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic

---

[3] "However, the court need not 'accept as true a legal conclusion couched as a factual allegation.'"  <u>Smith v. Delta Air Lines, Inc.</u>, 422 F. Supp. 2d 1310, 1324 (N.D. Ga. 2006) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original) (citations and internal marks omitted).

Furthermore**,** "Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>Broner v. Wash. Mut. Bank, FA</u>, 258 F. App'x 254, 256 (11th Cir. 2007) (per curiam) (unpublished) (<u>quoting</u> Fed. R. Civ. P. 8(a)(2)). "Factual allegations must be enough to raise a right to relief above the speculative level," <u>Twombly</u>, 550 U.S. at 555 (footnote and citation omitted), as the complaint must contain "enough facts to state a claim to relief that is plausible on its face," <u>id.</u> at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (<u>citing</u> <u>Twombly</u>, 550 U.S. at 556). The Supreme Court in <u>Iqbal</u> held:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . .

> [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief."

556 U.S. at 678-79 (last alteration in original) (citations and internal marks omitted).

## III.  DISCUSSION

Circle K contends that Crawford's § 1981 retaliation claim should be dismissed pursuant to Rules 8 and 12(b)(6) for failure to state a claim for which relief can be granted.  [Doc. 5 at 8-11; Doc. 11 at 4-7].  Circle K also asserts that Crawford's request for injunctive relief should be dismissed for lack of standing pursuant to Rule 12(b)(1).  [Doc. 5 at 12-13; Doc. 11 at 7-9].  The Court will address each of these claims.

### A.  Retaliation Claim under § 1981

Crawford alleges that Circle K retaliated against him in violation of § 1981 when it terminated his employment for his complaints about racially discriminatory employment practices, among other things.  See generally [Doc. 1]; see also [id. ¶¶ 49-52].  "Section 1981 protects an individual's right to be free from racial discrimination in the 'making, performance, modification, enforcement, and termination' of contracts, including contracts of employment."  Whitner v. Emory Univ., Civil Action File No. 1:06-CV-1518-TWT, 2008 WL 4224407, at *13 (N.D. Ga. Sept. 12, 2008), adopted in part at *1 (quoting 42 U.S.C. § 1981).  Section 1981 also

"prohibits an employer from retaliating against its employee in response to the employee's complaint of race-based discrimination." Braswell v. Allen, 586 F. Supp. 2d 1297, 1310 (M.D. Ala. 2008) (citation omitted). Circle K argues that Crawford has failed to present a prima facie case of retaliation because he cannot show that he had an objectively reasonable belief that the complained of discrimination actually violated § 1981, nor does he allege facts sufficient to show causation.[4] [Doc. 5 at 9-11]. Circle K's arguments, however, overlook the fact that a "§ 1981 complaint need not allege facts specific to make out a prima facie case, just enough factual matter to suggest retaliation," Melton v. Nat'l Dairy LLC, 705 F. Supp. 2d 1303, 1333 (M.D. Ala. 2010) (citations omitted); see also Uppal v. Hosp. Corp. of Am., 482 F. App'x 394, 396 (11th Cir. 2012) (per curiam) (unpublished) (second alteration in original) (citation and internal marks omitted) ("Although a . . . complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case, it must

---

[4] "The analysis or framework initially applied to determine whether a plaintiff has established a claim under § 1981 is essentially the same as the analysis applied under Title VII." Whitner, 2008 WL 4224407, at *13 (citations omitted). Thus, to establish a prima facie case of retaliation under § 1981, Crawford must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action; and (3) the adverse action was caused by his engaging in protected activity. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008); Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam); Whitner, 2008 WL 4224407, at *19.

provide enough factual matter (taken as true) to suggest [retaliation]"), which Crawford has done.

The facts alleged in Crawford's complaint, when taken as true and construed in his favor, state a plausible claim of retaliation under § 1981. Crawford alleges that he engaged in protected activity by complaining to Human Resources of racially discriminatory employment practices several times over the course of his employment, [Doc. 1 ¶¶ 12-47], and that he was ultimately terminated[5] after complaining in writing to his supervisor about his promotion of a Caucasian employee who was on a performance action plan at the time and again complaining about unequal pay for African American employees in a conversation with his supervisor and about "the blatantly discriminatory employment practices at Circle K" in a subsequent meeting with the Human Resources Director. [Id. ¶¶ 38-47]; see also Shannon v. Bellsouth Telecomm., Inc., 292 F.3d 712, 715 n.2 (11th Cir. 2002) (identifying "voicing complaints of [racial] discrimination to [] supervisors" as protected activity). Indeed, "the employer's practice, which a plaintiff opposes does not in fact have to be unlawful . . . rather, the employee need only have a reasonable belief that the employer's practices are discriminatory." Danner v. Sumter Cnty. Bd.

---

[5] It is undisputed that termination constitutes an adverse employment action. See Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006) (stating that termination is an adverse employment action).

of Educ., No. 7:12–CV–02391–RDP, 2013 WL 754956, at *4 (N.D. Ala. Feb. 26, 2013) (citations and internal marks omitted). Crawford specifically has alleged that he was terminated from his employment for complaining about Lloveras' alleged race-based employment decisions, including, but not limited to, terminating minority employees without a basis for such action, refusing to promote minority employees, paying Caucasians more than African Americans, and promoting less qualified Caucasian employees over minority employees. See generally [Doc. 1]; see also [id. ¶¶ 33-46]. These "factual assertions satisfy the pleading standard required to establish that [he] engaged in statutorily protected activity." Danner, 2013 WL 754956, at *4.

Finally, despite Circle K's arguments to the contrary, see [Doc. 5 at 11; Doc. 11 at 6-7], the time frame presented in Crawford's complaint establishes sufficient temporal proximity to establish causation at this stage of the litigation, see [Doc. 1 ¶¶ 37-47 (alleging that he last complained about racially discriminatory practices directly to his supervisor and to Human Resources in July, 2009, and that he was terminated the same month)]; Robinson v. LaFarge N. Am., Inc., 240 F. App'x 824, 829 (11th Cir. 2007) (per curiam) (unpublished) (citing Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1291 (11th Cir. 2000)) (stating that causation was sufficiently alleged where adverse action occurred about two months after protected activity).

Accordingly, it is **RECOMMENDED** that Circle K's motion to dismiss be **DENIED** with respect to Crawford's retaliation claim under § 1981.

## B.  Claim for Injunctive Relief

Circle K also moves to dismiss Crawford's request for a permanent injunction under Rule 12(b)(1), arguing that Crawford, as a former employee of Circle K, lacks standing to seek this relief.  [Doc. 5 at 12-13; Doc. 11 at 7-9].  In response, Crawford attempts to distinguish the cases cited by Circle K and maintains that even if Circle K "is correct, [he] plans to amend his complaint to add his Title VII allegations and at the same time to add a request for reinstatement," and if successful, he "will no longer be a former employee."  [Doc. 8 at 20-23].

Crawford's standing to seek injunctive relief depends on whether he is likely to suffer future injury.  Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1334 (11th Cir. 2013) (citation and quotation marks omitted); see also City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346-47 (11th Cir. 1999).  That is, Crawford "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future."  Houston, 733 F.3d at 1334 (citation and internal marks omitted).  "That requires a real and immediate– as opposed to a merely conjectural or hypothetical–threat of future injury."  Id. (citations and internal marks omitted).  The Eleventh Circuit has held

12

that "a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) (citations omitted).[6]

As a former employee, Crawford "lacks standing to maintain a claim for injunctive or declaratory relief against his former employer," Smith v. Wayne Farms, L.L.C., Civil Action No. CV–11–S–3590–NE, 2012 WL 1746857, at *4 (N.D. Ala. May 16, 2012) (emphasis omitted) (citing Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1007 (11th Cir. 1997)).  Indeed, since Crawford is no longer employed by Circle K, he cannot show "a real and immediate–as opposed to a merely conjectural or hypothetical–threat of future injury," Wilborn v. S. Union State Cmty. Coll., 720 F. Supp. 2d 1274, 1304 (M.D. Ala. 2010) (citation and internal marks omitted); see also Drayton v. W. Auto Supply Co., No. 01-10415, 2002 WL 32508918, at *4-5 (11th Cir. Mar. 11, 2002), and the mere fact that he may amend his complaint sometime in the future does not alter the conclusion that his request for injunctive relief should be dismissed at this time, see Wood v. Dixon, Civil Action No. 13–0278–KD–N, 2013 WL 6183143, at *4 & n.7 (S.D. Ala. Nov. 26, 2013), adopted at *1 (citation omitted) (finding plaintiff, as a former employee, who was not currently seeking reinstatement, lacked standing to seek prospective injunctive relief and noting that

---

[6] Although Shotz was decided under the Americans with Disabilities Act, the analysis is equally applicable to the circumstances of this case.

"request for reinstatement must be clear on the face of the complaint"). Accordingly, it is **RECOMMENDED** that Circle K's motion to dismiss be **GRANTED** with respect to Crawford's request for injunctive relief.

### IV.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Circle K's motion to dismiss, [Doc. 5], be **DENIED** with respect to Crawford's § 1981 retaliation claim but **GRANTED** with respect to his claim for injunctive relief.

**IT IS SO RECOMMENDED**, this 7th day of March, 2014.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

14